# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARSHALL E. PIKE, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) 1:21CV921 |
| DEMPSTER INDUSTRIES, INC., *et al.*, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Plaintiff Marshall E. Pike ("Mr. Pike" or "the decedent") initially brought this products-liability lawsuit against fourteen Defendants in 2021 seeking compensatory and punitive damages related to Mr. Pike's September 2021 diagnosis of mesothelioma. (ECF No. 1.) In the Second Amended Complaint, Mr. Pike alleged that he was exposed to asbestos-containing materials during the course of his employment from approximately 1966 to 2021 and that this exposure resulted in his diagnosis. (ECF No. 88 ¶¶ 30–31.) Mr. Pike died on June 21, 2023, from malignant mesothelioma. (*Id.* ¶ 2.) Plaintiffs Shane Chadwick Pike and Jason Andrew Pike, as Co-Executors of the Estate of Marshall E. Pike, are Plaintiffs maintaining the lawsuit as a wrongful death action. (*Id.* at 1, ¶ 1.) Before the Court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by Defendant Defco, Inc. ("Defco"). (ECF No. 82.) For the reasons set forth below, the Court grants Defendant Defco's motion.

## I. BACKGROUND

Mr. Pike was born in Liberty, North Carolina, and spent his entire life in the Greensboro, North Carolina, area. (ECF No. 90-1 at 8:7-13.) He began working for General Metals in late 1965 or 1966. (*Id.* at 22:5-10.) Among other things, General Metals manufactured farming equipment. (*Id.* at 22:11-20.) Mr. Pike worked in the farm division of General Metals. (*Id.* at 23:3-5.) He worked for General Metals for approximately one year, left for one year, and then resumed working at General Metals until the early 1980s. (*Id.* at 44:21–45:19, 46:5–47:11.) Thereafter, the decedent started and worked at his own company General Fertilizer Equipment (a/k/a Speedy Spread), from 1985–2021, doing the same kind of work he did at General Metals. (ECF Nos. 88 ¶ 30; 83-1 at 50:12–51:14.)

The farm division of General Metals built farm equipment, primarily spreaders and sprayers to fertilize crops. (ECF No. 83-1 at 22:11–23:1.) When Mr. Pike first started at General Metals, he developed a parts department and created a system to keep track of replacement parts. (*Id.* at 23:6-23.) He also performed maintenance on spreader and sprayer pumps the entire time he worked at General Metals. (*Id.* at 24:5-8; 25:15-24; 46:5-14.)

Mr. Pike testified that each spreader would have one pump and the size of the pumps depended on the size of the spreader. (*Id.* at 26:10–29:15.) A 200 to 215-gallon spreader would have a pump with a 3-inch inlet and 2-inch outlet. (*Id.* at 29:4-15.) To repair pumps, Mr. Pike first drained all the oil and removed the bottom strainer and bottom intake, then removed the manifold chamber. (*Id.* at 30:11–31:18.) There were gaskets on the manifold and on the bottom. (*Id.* at 31:2-6.) To remove the gaskets, Mr. Pike scraped off the gasket material using a putty knife and then used a grinding wheel to remove the remaining material.

(*Id.* at 32:14-33:18.) He testified that removing the gasket material created visible dust that he could see and breathed. (*Id.* at 33:19–34:9.) Mr. Pike further testified that in the 1960s and 1970s, the gasket material was asbestos. (*Id.* at 35:21–36:5.) Some of the transfer pumps also had flanged connections. (*Id.* at 35:10-18.) There were gaskets between the flanges that were removed the same way. (*Id.* at 43:15-18; 44:5-9.) Mr. Pike testified that he first started working on and/or with Defco pumps in the mid-1970s. (*Id.* at 74:8-14.) He recalled that Defco pumps were centrifugal pumps with impellers that attached directly to the sprayers. (*Id.* at 74:15-21.) Also, the decedent recalled that Defco pumps had housing gaskets, one oil seal gasket, and used flange gaskets on the connection to the pipe. (*Id.* at 75:7–76:5.)

During the 1970s, Mr. Pike served as a distributor of Defco pumps for three years. (*Id.* at 74:22-75:6.) He recalled working on Defco pump models 525 and 7600. (*Id.* at 76:20-25.) He kept the manuals and parts lists produced to him by the manufacturers of the pumps he worked on. (*Id.* at 63:14–64:12.) He had parts lists for Defco pump models A-7600 and A-2500 pumps. (*See* ECF No. 90-3 at 2–18.) The Defco parts lists for both the A-7600 and A-2500 pumps identify asbestos cover plate gaskets and asbestos impeller case gaskets. (ECF No. 90-3 at 2, 3.) Mr. Pike also performed "rebuilds" on pumps, which is like maintenance except during rebuilds he took everything apart in the pump "from one end to the other." (ECF No. 83-1 at 40:6-22.) He testified that 60–65% of the work on pumps at General Metals was repairs, and the rest of the work was rebuilds. (*Id.* at 44:10-15.)

Mr. Pike testified that pump repairs typically took 4.5 to 5 hours and rebuilds of pumps took approximately 8 hours. (ECF No. 90-2 at 263:17–264:1.) After doing repair work, he cleaned the area using a broom and dustpan, which created dust that he breathed. (ECF No.

3

90-1 at 57:14–58:2.) He also used compressed air to clean out the pumps during maintenance and to clean off his clothes at the end of the day. (ECF No. 90-2 at 262:1–263:7.) Mr. Pike testified that the replacement gaskets and packing for the pumps came directly from the manufacturer in "repair kits," (ECF No. 90-1 at 39:10-22), and further testified that Defco pumps did not have packing, (ECF No. 83-1 at 76:6-7). The decedent recalled that the replacement parts were from the manufacturer because he ordered them directly through the purchasing agent. (ECF No. 90-1 at 39:23–40:4.)

Mr. Pike testified that he "[p]robably never worked [on] over a half a dozen" Defco pumps total and did not work on Defco pumps after he stopped being a distributor. (*Id.* at 76:8-19, 142:8-22.) According to Mr. Pike, he believed that the Defco pump gaskets exposed him to asbestos. (*Id.* at 75:7-9.) With respect to the type of work, Mr. Pike could not recall whether the six Defco pumps that he worked on were repairs or rebuilds. (*Id.* at 143:1-5.) He testified that not all repairs involved working on gaskets; however, based on the problems with Defco pumps that he remembered, he testified that the six times he worked on Defco pumps would have involved gaskets. (*Id.* at 143:7-16.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (citations and internal quotation marks omitted). "[I]n deciding a motion for summary judgment, a district court is required to view the evidence in the light most favorable to the

4

Case 1:21-cv-00921-LCB-JLW   Document 107   Filed 03/21/24   Page 4 of 11

nonmovant" and to "draw all reasonable inferences in his favor." *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (citing *Jacobs*, 780 F.3d at 568). A court "cannot weigh the evidence or make credibility determinations," *Jacobs*, 780 F.3d at 569 (citations omitted), and thus must "usually" adopt "the [nonmovant's] version of the facts," even if it seems unlikely that the nonmoving party would prevail at trial, *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Where the nonmovant will bear the burden of proof at trial, the party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, then the burden shifts to the nonmoving party to point out "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In so doing, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). Instead, the nonmoving party must support its assertions by "citing to particular parts of . . . the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 324.

## III. DISCUSSION

To prevail in an asbestos-related product-liability action under North Carolina law,[1] a plaintiff must establish that he was "actually exposed to the alleged offending products." *See Wilder v. Amatex Corp.*, 336 S.E.2d 66, 68 (N.C. 1985). Consistent with that requirement, the Fourth Circuit has further held that a North Carolina asbestos plaintiff "'must prove more than a casual or minimum contact with the product' containing asbestos in order to hold the manufacturer of that product liable." *See Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 & n.2 (4th Cir. 1995) (quoting *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986) and applying its threshold causation standard to a North Carolina case). Instead, to support a reasonable inference of substantial causation from circumstantial evidence, a plaintiff must introduce "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* (internal quotation marks omitted) (quoting *Lohrmann*, 782 F.2d at 1162–63). Federal courts have long used this "frequency, regularity, and proximity" test—the "*Lohrmann* test"—to evaluate proximate causation in asbestos cases arising under North Carolina law. *See, e.g.*,

---

[1] As a federal court sitting in diversity, this Court is bound to apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–96 (1941). "In tort actions, North Carolina courts adhere to the rule of lex loci and apply the substantive laws of the state in which the injuries were sustained." *Johnson v. Holiday Inn of Am., Inc.*, 895 F. Supp. 97, 98 (M.D.N.C. 1995); *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988) ("This Court has consistently adhered to the lex loci rule in tort actions."). Mr. Pike's alleged exposure to the moving Defendant's products occurred in North Carolina. Accordingly, the Court will apply North Carolina's substantive law.

*Prekler v. Owens-Corning Fiberglas Corp.*, 60 F.3d 824 (table), 1995 WL 417731, at *3 (4th Cir. July 6, 1995) (unpublished) (per curiam); *Jones*, 69 F.3d at 716.

In *Lohrmann*, the Fourth Circuit held that plaintiffs did not meet their burden when they introduced testimony that the afflicted employee had been exposed to an asbestos-containing product "on ten to fifteen occasions of between one and eight hours duration during the term of his employment." 782 F.2d at 1163.

Plaintiffs point out that the disease at issue in *Lohrmann* was asbestosis and not mesothelioma, which is the disease at issue in this case. (*See, e.g.*, ECF No. 90 at 17.) Citing a number of non-binding cases, they argue that the bar to demonstrate asbestos exposure under *Lohrmann* should be meaningfully lower given that "mesothelioma is caused by relatively brief and low-level asbestos exposures—much lower than the exposure levels required to induce asbestosis."[2] (*Id.* at 17.) The Fourth Circuit has addressed this distinction with regards to how it affects jury instructions, stating in dicta that "an evidentiary instruction on asbestosis theoretically requires proof of greater exposure than mesothelioma." *Finch v. Covil Corp.*, 972 F.3d 507, 514 n.2 (4th Cir. 2020). That said—and more pertinent to the motion currently at issue—the court held that the *Lohrmann* standard nevertheless applied in a mesothelioma case arising under North Carolina law. *Id.* This is in accordance with federal courts that have

---

[2] Plaintiffs have presented expert testimony in this case that "there is no safe level of exposure" to asbestos. (ECF No. 90-11 ¶ 45.) Plaintiffs' expert states that "[e]ach exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease." (*Id.* ¶ 44.) Plaintiffs contend that this expert evidence raises genuine issues of material fact regarding causation. (ECF No. 89 at 12–14.) As district courts within the Fourth Circuit have historically found and the Fourth Circuit has recently affirmed, "[w]hether there is sufficient evidence in the record to satisfy the 'frequency, regularity, and proximity' test is a legal determination." *Foushee v. R.T. Vanderbilt Holding Co., Inc.*, 507 F. Supp. 3d 654, 660 (E.D.N.C. 2020) (colleting cases), *aff'd*, No. 21-1074, 2023 WL 2888561 (4th Cir. Apr. 11, 2023) (unpublished) (per curiam).

routinely reached the same conclusion. *See, e.g.*, *Haislip v. Owens-Corning Fiberglas Corp.*, 86 F.3d 1150 (table), 1996 WL 273686, at *2 (4th Cir. May 23, 1996) (unpublished) (per curiam); *Finch v. BASF Catalysts LLC*, No. 1:16-CV-1077, 2018 WL 4101828, at *4 (M.D.N.C. Aug. 22, 2018); *Starnes v. A.O. Smith Corp.*, No. 1:12-CV-360-MR-DLH, 2014 WL 4744782, at *3 (W.D.N.C. Sept. 23, 2014); *Jandreau v. Alfa Laval USA, Inc.*, No. 2:09-91859-ER, 2012 WL 2913776, at *1 n.1 (E.D. Pa. May 1, 2012). In other words, even if a mesothelioma action requires less frequent and regular interactions with asbestos-containing materials than would an asbestosis action, this does not eliminate the need to demonstrate that actual exposure occurred frequently, regularly, and in close proximity to the plaintiff.

### A. Defco, Inc.'s Motion for Summary Judgment

Here, Plaintiffs contend that Mr. Pike was diagnosed with mesothelioma after being repeatedly exposed to asbestos while working as a parts manager, purchasing agent, and repair technician on fertilizer metering and pressure and associated pumps from 1966 to 2021 and that Mr. Pike's job duties included, in part, performing maintenance and repair on pumps, including pumps manufactured and/or distributed by Defco, Inc. (ECF No. 90 at 1.) Plaintiffs contend that these pumps utilized multiple asbestos gaskets, and that Mr. Pike was exposed to friable asbestos during his replacement of the asbestos gaskets inside Defco pumps. (*Id.*) Defendant Defco contends that Mr. Pike's interactions with Defco pumps were limited and that the evidence does not meet *Lohrmann*'s "frequency, regularity, and proximity" test as to Defco pumps. (*See* ECF No. 83 at 2–4, 10.) The Court agrees.

Although Defendant Defco appears to deny that its pumps or related equipment contained asbestos, (ECF No. 83-2 at 2, 10), the parts lists for Defco pumps that Mr. Pike had

8

in his possession and those produced by Defco identify asbestos as the material for components including the gaskets and impeller case gaskets, (ECF Nos. 90-3 at 2, 3; 90-5 at 2–5). Even assuming the Defco gaskets contained asbestos, and that Mr. Pike's work involved the gaskets, the evidence establishes that Mr. Pike only worked on six Defco pumps within a three-year period. (ECF No. 83-1 at 76:8-19, 142:8-22.) The record does not demonstrate exposure to those products on a regular basis or for any extended period of time. Mr. Pike personally testified that he worked on no more than six Defco pumps total, (ECF No. 90-1 at 76:8-19, 142:8-22), over the span of his approximately 55-year career.

Furthermore, Plaintiffs cannot satisfy their burden under *Lohrmann* by presenting "[e]vidence of the mesothelioma disease process and the amount of exposure that can cause this disease," (*see* ECF No. 90 at 14)—via expert reports or scientific literature. (*See id.* at 14–17.) The question is not whether Mr. Pike's mesothelioma was caused by exposure to some source of asbestos; rather, *Lohrmann* asks whether the evidence would permit a reasonable jury to conclude that Defco products, specifically, were a substantial cause of his disease.

Even viewing this evidence in the light most favorable to Plaintiffs, the Court cannot conclude that Mr. Pike worked on Defco pumps with the frequency and regularity required by *Lohrmann*. In *Lohrmann* itself, the Fourth Circuit found evidence of exposure "on ten to fifteen occasions" over a four-decade period insufficient to show causation at summary judgment. *See* 782 F.2d at 1163. More recently, in *Young v. Am. Talc Co.*, a mesothelioma action, this Court applied the *Lohrmann* test and awarded summary judgment to a defendant when the evidence showed thirteen specific instances of exposure over a twenty-eight-year period. *See* No. 1:13CV864, 2018 WL 9801011 at *1, 5 (M.D.N.C. Aug. 3, 2018). The Court

9

Case 1:21-cv-00921-LCB-JLW   Document 107   Filed 03/21/24   Page 9 of 11

finds that given Mr. Pike's infrequent and nonregular exposure to Defco pumps, a jury could not reasonably conclude that asbestos exposure from Defco pumps was a substantial factor in causing Mr. Pike's disease.

Plaintiffs also seek punitive damages from Defendant Defco. (ECF No. 88 at 20.) In North Carolina, a claim for punitive damages must be proven by clear and convincing evidence. N.C. Gen. Stat § 1D-15(b). On summary judgment, a court must view the evidence presented through the "prism" of this heightened evidentiary burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). Punitive damages may be awarded in North Carolina only if the defendant (1) is liable for compensatory damages and (2) engaged in fraud, malice, or willful or wanton conduct. N.C. Gen. Stat § 1D-15(a). Here, the Court has found that Defendant Defco, Inc. is not liable for compensatory damages as the undisputed facts in the record establish that summary judgment in Defendant Defco's favor is appropriate. Therefore, Plaintiffs cannot meet the burden for punitive damages against Defendant Defco. Accordingly, summary judgment is granted with respect to Plaintiffs' claim for punitive damages.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs have failed to meet their burden to provide evidence of Mr. Pike's exposure to asbestos-containing products attributable to Defendant Defco, Inc. "on a regular basis over some extended period of time in proximity to where [Mr. Pike] actually worked." *Jones*, 69 F.3d at 716 (internal quotation

10

Case 1:21-cv-00921-LCB-JLW   Document 107   Filed 03/21/24   Page 10 of 11

marks omitted) (quoting *Lohrmann*, 782 F.2d at 1162–63). Therefore, Defendant Defco, Inc. is entitled to judgment as a matter of law on all of Plaintiffs' claims against it.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment filed by Defendant Defco, Inc., (ECF No. 82), is **GRANTED**. Plaintiffs' claims against Defendant Defco, Inc. are hereby **DISMISSED**.

This, the 21st day of March 2024.

/s/ Loretta C. Biggs
United States District Judge